### No. 10,561.

### SUCCESSION OF EMILY GLOVER.

1. An executor who pays bills, some of them afterward shown not to have been due; who delivers property to legatees and thereby renders it impossible to execute the terms of the will, and makes these payments and delivery after the judge had refused to allow them to be made; after his dismissal will not be reinstated on appeal.

2. Ordinarily a direct action must be instituted to destitute an executor from his office, but when the law and the will of the testator are disregarded, his dismissal will be maintained, although made on trial of an opposition to his account, when in the opposition charges of maladministration are made and are proven without objection.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Buck, Dinkelspiel & Hart* for the Executor, Appellant.

*Gus. A. Breaux* and *R. H. Browne* contra.

The opinion of the court was delivered by

BREAUX, J. Mrs. Emily Glover died testate. The testamentary executor qualified on the 2d day of August, 1888. After an inventory had been made, he petitioned the court for permission to pay debts secured by privilege, and to deliver certain legacies, also to be authorized to retain $2321 to be disbursed in building a vault, and to remove the remains of the son of the deceased in compliance with the will.

The judge refused the order. The executor disregarded the refusal, and paid the debts as well as delivered property to the estate in satisfaction of certain legacies.

On the 16th day of August, 1888, the executor presented an account of administration. Opposition was made to this account; it was maintained, and the account was rejected; the executor was ordered to file another.

In April, 1889, he presented a petition to have property sold to enable him to comply with the will. The property was sold in accordance with the prayer of his petition, but no attempt was made to comply with the first and important direction contained in the will.

In July of that year, a rule having been filed by two of the legatees, he was ordered to show cause why he should not file a statement of his account, as executor, and produce his bank book. In the event of non-compliance his dismissal was prayed for.

He complied with the court's order to the extent of filing an account, whereupon the rule was dismissed.

This account is opposed on various grounds.

There are a number of legatees named in the will. To two of these legatees the testatrix bequeathed all moneys "which may come to me from any source whatsoever to be paid to them ten years after my death by my executor." To these legatees she also bequeathed her real estate.

She gives to another her diamond ring cluster, and leaves her personal effects to Adelaide Pope Noble.

There follow in the will other legacies, of little value, made to other legatees.

These are subject to the direction that "my executor must first before paying the legatees buy a lot in Metairie Ridge cemetery, and build a substantial tomb on it, not to cost less than $1500, in which I am to be buried, and the remains of my son, William Horace Glover, are to be removed into it, at the expense of my succession."

Instead of complying with the will and with the judge's direction the executor paid, at one time, claims to the amount of $1200.50; at another, $260.05, and left in bank to his credit the sum of $89.45. Besides, he placed legatees in possession of certain property.

He chose to deliver to Adelaide Pope Noble a bond of $1000 due by the City of New Orleans.

These payments, and the delivery of these legacies, are set forth in his final account. This account is opposed by Mrs. McKinley and Mrs. Johnson, legatees, who allege that the delivery to Adelaide Pope Noble of the bond of $1000 is unauthorized and illegal. Further that the executor received $3050.95 which were deposited in bank.

That he paid bills without an order of court to the amount of $1699.73. That the judge had refused to allow these payments to be made.

That items paid were not due.

The court a qua decided that the amounts to which the executor has a right to a credit aggregated $1559.73; of the claims carried on the account as "claims unpaid," the court allowed certain items and rejected others, and held that the debts paid and the claims unpaid, amounted to $2130; leaving a balance on hand of $920.

The court also decided that the bond due by the City of New Orleans should not have been delivered to Adelaide Pope Noble, the tomb not having been built; this being the first duty enjoined upon the executor.

He was dismissed from his trust as executor.

From the judgment he prosecutes this appeal and asks for a reversal of the judgment and to be re-instated as executor on the grounds:

1. "Insofar as the judgment decrees the return of the city bond of $1000, and in default of its return condemns the executor to pay its value."

This bond was delivered in total disregard of the will, and in opposition to the judge's direction. It is evident that the executor was without means, owing to his own acts, to carry out the expressed wish of the testator.

As a witness he answered the following questions:

" Q. Where is the money to pay for the tomb, $2321?

" A. I will get it.

" Q. Where will you get it from?

" A. From the succession of Mrs. Glover.

" Q. Have you got any such money in your hands now?

" A. No, sir."

There is a claim carried in the inventory, and appraised at $6530.27, for which a judgment was obtained in the State of Mississippi.

The executor places great reliance in this judgment, and endeavors to make it appear that it is a valuable asset of the succession, and that with part of the amount realized the tomb will be built, and the will complied with in this respect.

The facts disclosed by the record have convinced us that this judgment represents but little as due to the succession, and that it will not amount to anything in the end.

Most of it has been collected and the balance due is but little.

The bond should be returned in accordance with the direction of the District Court, and the right of the parties fixed contradictorily with each other.

Without this bond the record does not disclose that the will can be carried out.

The purpose in having it returned is to enable the executor to comply with its terms.

The appellant submits a second proposition upon which he relies to have the judgment reversed.

2. "Insofar as it strikes from the account the items of J. Benj.

Chandler, retaining fee for auditing account of Singleton, Brown and Chode, $50, and $319.17 fees for auditing same account."

As the appellant was the regularly appointed agent of Mrs. Glover, and it appears that he did render services, the amount of $50 claimed is not excessive, and will be allowed; but the claim of $319.17 is not due, and is illegal:

The next claim, viz:

3. "In so far as it condemns the executor to account for and pay over to the succession the sum of $920." If this were rejected it would be an approval of all the illegal demands presented.

It is the balance heretofore established to be due.

Lastly:

4. "In so far as it removes the executor from his trust and destitutes him from his office as executor."

In the matter of the settlement of successions great discretion necessarily vests with the District Courts. Those who are appointed to represent heirs, legatees and creditors are, as it were, under their immediate supervision. Their orders should be followed except when clearly illegal.

In the trial of this opposition, it was proven without objection as to form that the executor has not followed the mandates of testatrix as expressed in her will.

Nothing has been done to inter the remains of the testatrix and her son as directed. Legatees have been placed in possession of legacies to which they had no right at the time of the delivery. Bills have been paid without the court's order, and some of them, it is proven, were not due.

Ordinarily a direct action must be instituted to destitute an executor from his office, but when the evidence establishes a total disregard of the requirements of law, and an absolute refusal to comply with the court's direction, an executor, after his dismissal, will not be reinstated on appeal and replaced in office, although the dismissal be made on rule, or on trial of an opposition to his accounts, when in the opposition charges of maladministration are made and proven. R. Peale vs. White, 7 An. 449; Succession Townsend, 37 An. 407; Gray vs. Naddellaud, 33 An. 1021.

It is ordered, adjudged and decreed that the judgment appealed from be amended by allowing appellant the sum of $50 for services

rendered as agent, thereby increasing the debts paid to $2180, and lowering the balance due of $870 instead of $920.

After amendment, judgment affirmed at appellee's costs.

### ON APPLICATION FOR A REHEARING.

The executor, through counsel, in his first brief states:

"The judgment also condemns the executor to account to the succession for a sum of $920.12 with interest from the date of payment. This item has neither pleading nor proof to support it, and how the judge charges the executor with it we fail to understand."

In the brief for rehearing, counsel states:

"Upon the call of the legatees, on the order of the court the executor filed his bank books, which are before this court in the original, and show a balance in the Whitney National Bank of $919.38, and in the Canal Bank of $35.89. This money, after the appointment of the public administrator as dative testamentary executor, was delivered to him."

"Therefore, that portion of the judgment, which as amended by your Honors, condemns the executor to pay $870.12, if allowed to stand would impose upon him a double liability. It should be but the sum of $90. The two items of $25 and $65, which the court has held he improperly paid himself."

The payment of this amount (which is the balance found due by us after deducting $50, allowed the executor, which had been rejected by the District Court), if paid, has been paid since the trial, and must in that event be carried to the credit of the judgment.

There is no double charge, and but one payment can be exacted.

There is no evidence before the court to show that payment has been made since the judgment, and no payment could have been made prior.

But if payment has been made as contended by counsel, the receipt will protect the executor from a second payment.

Another question of fact, alleged as a ground for a new trial, is equally as unfounded.

The executor's counsel claimed that he was overcharged in matter of the bond due by the City of New Orleans, delivered to one of the legatees, and directed to be returned or its value to be paid to the succession.

Although the principal is $1000, it was appraised when the inven-

tory of the succession assets was taken at $1090 (owing to interest). In the judgment appealed from it is carried for $1109. In his own account the executor charges the legatee with $1109, value of the bond fixed by himself.

This account has been homologated since the 21st day of August, 1889.

The accountant, at the time, fixed this value. This court has adopted his estimate of its value as charged in his account, viz: $1109.

Rehearing refused.